# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 1 8 2014

~madsen CJ.

CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on Sept. 18, 2014

Ronald R. Carpenter
Supreme Court Clerk


# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KATHRYN SCRIVENER, | ) | |
| | ) | |
| Petitioner, | ) | No. 89377-2 |
| v. | ) | |
| | ) | En Banc |
| CLARK COLLEGE, | ) | |
| | ) | |
| Respondent. | ) | Filed    SEP 1 8 2014 |
| | ) | |

WIGGINS, J.—The purpose of Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, is to eliminate and prevent discrimination in the workplace. RCW 49.60.010. The legislature passed the statute after finding that discrimination "threatens not only the rights and proper privileges of [Washington] inhabitants but menaces the institutions and foundation of a free democratic state." Id. Accordingly, the legislature directs us to construe the WLAD liberally. RCW 49.60.020.

Kathryn Scrivener sued Clark College, claiming that age was the reason it did not hire her for a tenure track teaching position. She was 55 years old at the time, squarely within the 40- to 70-year-old age range protected by the WLAD. The chosen hires were both under the age of 40. The trial court granted summary judgment in Clark College's favor, finding that Scrivener failed to prove that the college's stated reason for its decision was a pretext. The Court of Appeals affirmed. Scrivener v. Clark

*Coll.*, 176 Wn. App. 405, 407, 309 P.3d 613, *review granted*, 179 Wn.2d 1009, 316 P.3d 495 (2013).

Today, we clarify the standard plaintiffs must meet to overcome summary judgment. Employees may satisfy the pretext prong of the *McDonnell Douglas* framework by offering sufficient evidence to create a genuine issue of material fact either (1) that the employer's articulated reason for its action is pretextual or (2) that, although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Applying this standard, we reverse summary judgment. Scrivener created a genuine issue of material fact concerning whether age was a substantial factor motivating Clark College's decision to hire younger candidates.

*Facts*

Scrivener began teaching as an adjunct instructor at Clark College in 1994. In 1999, Clark College hired her as a full-time, temporary English instructor. It has renewed her one-year contract every year since that time. In 2005, she applied for a tenure-track teaching position in the English Department.

Clark College initiated the search for an English instructor in November 2005. The college received 152 applications meeting the minimum qualifications, which were a master's degree in English, rhetoric and composition, or professional-technical writing, and teaching experience. From these applicants, the screening committee interviewed 13 candidates who gave teaching demonstrations. The screening

committee then chose four candidates to refer to the president and vice president of instruction.

Scrivener was one of the four candidates the committee referred to the president and vice president. She possessed all of the qualifications listed as required and desirable on the recruitment announcement. President Branch and interim Vice President of Instruction Sylvia Thornburg interviewed Scrivener in May 2006 and informed her the same day that she was not chosen to fill either of the vacant English positions. Instead, Clark College hired two applicants under the age of 40. Scrivener was 55 years old at the time.

Scrivener filed a complaint against Clark College for unlawful age discrimination in violation of RCW 49.60.180. Scrivener's allegation of age discrimination is based on the following evidence.

During President Branch's 2006 "State of the College" address, he stated that there was a "glaring need" for younger talent within the college's faculty. In a public forum, President Branch also advocated requiring no experience for the English positions. Scrivener argues that this creates an inference that he wanted to attract younger applicants to the position.

Scrivener additionally presents evidence that President Branch hired many people under age 40 (only 44 percent of the tenure track faculty hires were 40 years of age or older during the 2005-06 school year); made light of her interview by impersonating Jon Stewart, host of television's *The Daily Show*; and requested applicants with "'funk,'" "'i.e., youthfulness.'" *Scrivener*, 176 Wn. App. at 410.

3

Clark College counters the allegation of age discrimination by asserting that 74 percent of its workforce is age 40 or over, both President Branch and interim Vice President Thornburg were well above age 40, and the hired candidates were better fits for both the institution and the English department. The college also directs the court's attention to the steering committee's observation that Scrivener lost her place at one point during her teaching demonstration, which could have caused some confusion in a class. Other weaknesses were that she could have turned to face her audience more when she was writing on the board and that "[w]hile [her] exuberance and passion were seen by the committee as positive, there could be an off-putting reaction by some passive students because of such an up-front style." Interim Vice President Thornburg attests that age was not discussed during the consideration of the candidates and that she and President Branch agreed that Scrivener was ranked last among the finalists.

*Analysis*

Today, we discuss the WLAD, clarify how the WLAD plaintiffs may overcome summary judgment, and explore whether the trial court properly granted summary judgment.

## 1. Standard of Review

We review a trial court's grant of summary judgment de novo. *Camicia v. Howard S. Wright Constr. Co.*, 179 Wn.2d 684, 693, 317 P.3d 987 (2014). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When making this determination, we consider all facts and make all reasonable, factual

4

inferences in the light most favorable to the nonmoving party. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

### 2. Age Discrimination Claims

Under the WLAD, it is an unfair practice for an employer to refuse to hire any person on the basis of age if the person is within the protected class of individuals between the ages of 40 and 70. RCW 49.60.180(1); *Griffith v. Schnitzer Steel Indus., Inc.*, 128 Wn. App. 438, 446-47, 115 P.3d 1065 (2005). At trial, the WLAD plaintiff must ultimately prove that age was a "substantial factor" in an employer's adverse employment action. *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 310, 898 P.2d 284 (1995). A "substantial factor" means that the protected characteristic was a significant motivating factor bringing about the employer's decision. *See id.* at 311; 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 330.01.01 (WPI) (6th ed. 2012). It does not mean that the protected characteristic was the sole factor in the decision. *See Mackay*, 127 Wn.2d at 310-11; WPI 330.01.01.

In *Mackay* we rejected the proposition that employees must prove that discrimination was the "determining factor" (i.e., that but for the discrimination, the employer's decision would have been different). *Mackay*, 127 Wn.2d at 309-10. We reasoned that to hold otherwise would be contrary to Washington's "resolve to eradicate discrimination" and would warp this resolve into "mere rhetoric." *Id.* We refused to "erect the high barrier to recovery implicated by the 'determining factor' standard . . . ." *Id.* at 310-11.

Relatedly, summary judgment to an employer is seldom appropriate in the WLAD cases because of the difficulty of proving a discriminatory motivation. *See*

5

*Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 144, 94 P.3d 930 (2004); *Sangster v. Albertson's, Inc.*, 99 Wn. App. 156, 160, 991 P.2d 674 (2000) ("Summary judgment should rarely be granted in employment discrimination cases."); *see also Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 90, 272 P.3d 865 (2012) (When the record contains reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation.). To overcome summary judgment, a plaintiff only needs to show that a reasonable jury could find that the plaintiff's protected trait was a substantial factor motivating the employer's adverse actions. *Riehl*, 152 Wn.2d at 149. "This is a burden of production, not persuasion, and may be proved through direct or circumstantial evidence." *Id.*

Where a plaintiff lacks direct evidence,[1] Washington courts use the burden-shifting analysis articulated in *McDonnell Douglas*, 411 U.S. 792, to determine the proper order and nature of proof for summary judgment. *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 667, 880 P.2d 988 (1994).

### 3. *McDonnell Douglas* Framework

Under the first prong of the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination, which creates a presumption of discrimination. *Riehl*, 152 Wn.2d at 149-50; *Kastanis v. Educ. Emps. Credit Union*, 122 Wn.2d 483, 490, 859 P.2d 26, 865 P.2d 507 (1993). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer

---

[1] During the hearing on summary judgment, Scrivener's attorney conceded there was no direct evidence of discrimination. She again did not argue that direct evidence existed before the Court of Appeals. Therefore, we do not address her argument that she presented direct evidence of discrimination. RAP 2.5(a). We likewise do not address her argument that we should abandon the *McDonnell Douglas* framework. *Id.*

6

to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 363-64, 753 P.2d 517 (1988).

"If the Defendant meets this burden, the third prong of the *McDonnell Douglas* test requires the Plaintiff to produce sufficient evidence that Defendant's alleged nondiscriminatory reason for [the employment action] was a pretext." *Hume*, 124 Wn.2d at 667. Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose. *Id.* at 668; *Grimwood*, 110 Wn.2d at 364; *Riehl*, 152 Wn.2d at 150.

If the plaintiff satisfies the *McDonnell Douglas* burden of production requirements, the case proceeds to trial, unless the judge determines that no rational fact finder could conclude that the action was discriminatory. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 186, 188-89, 23 P.3d 440 (2001), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006).

### 4. The Pretext Prong

Today's review focuses on the pretext prong of the *McDonnell Douglas* framework. The Court of Appeals applied an onerous standard, and we clarify what is required. An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer. *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 643 n.32, 911 P.2d 1319 (1996); *see Wilmot*

7

*v. Kaiser Alum. & Chem. Corp.*, 118 Wn.2d 46, 73, 821 P.2d 18 (1991); *Grimwood*, 110 Wn.2d at 365.

An employee does not *need* to disprove each of the employer's articulated reasons to satisfy the pretext burden of production. Our case law clearly establishes that it is the plaintiff's burden at trial to prove that discrimination was *a* substantial factor in an adverse employment action, not the only motivating factor. *See Mackay*, 127 Wn.2d at 309-11. An employer may be motivated by multiple purposes, both legitimate and illegitimate, when making employment decisions and still be liable under the WLAD. *See Mackay*, 127 Wn.2d at 309-11.

Here, the Court of Appeals required Scrivener to disprove that Clark College's articulated reasons were motivating factors. The Court of Appeals stated,

> [t]o show pretext, a plaintiff *must* show that the defendant's articulated reasons (1) had no basis in fact, (2) were not really motivating factors for its decision, (3) were not temporally connected to the adverse employment action, or (4) were not motivating factors in employment decisions for other employees in the same circumstances.

*Scrivener*, 176 Wn. App. at 412 (emphasis added). The Court of Appeals omitted from these four factors the possibility of proving that discrimination was a substantially motivating factor in the employment decision, as we made clear in *Wilmot*, *Fell*, and *Riehl*.

In the earlier *Kuyper* case, the Court of Appeals listed these factors as examples of how to prove the defendant's articulated reasons were pretextual: "a plaintiff must show, *for example*, that the reason has no basis in fact, it was not really a motivating factor for the decision, it lacks a temporal connection to the decision or was not a motivating factor in employment decisions for other employees in the same

8

circumstances." *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 738-39, 904 P.2d 793 (1995) (emphasis added). In the *Fulton* case, the Court of Appeals repeated these four factors, omitting that they were only examples. *Fulton v. Dep't of Soc. & Health Servs.*, 169 Wn. App. 137, 161, 279 P.3d 500 (2012). Now in this case, the Court of Appeals repeated the *Fulton* error, overlooking that a plaintiff may also establish pretext by proving that discrimination was a substantially motivating factor in the employment decision. This was error. A plaintiff may satisfy the pretext prong using one of the four factors listed by the Court of Appeals, but the plaintiff may also satisfy the pretext prong by presenting sufficient evidence that discrimination nevertheless was a substantial factor motivating the employer.

### 5. Summary Judgment

We hold that Scrivener presented sufficient evidence to create a genuine issue of material fact either (1) that Clark College's articulated reason was a pretext or (2) that although the reason is legitimate, age was a substantial motivating factor in Clark College's decision not to hire Scrivener.

The college articulated ambiguous reasons for not hiring Scrivener. It argued that the other candidates were clearly qualified and were the "best fit" for the college and department. These are vague descriptions. Scrivener successfully taught at the college as a full-time professor since 1999, before which she taught as an adjunct professor. The record makes clear that she fulfilled all the minimum requirements and the desired qualifications, while neither of the hired candidates fulfilled all of the desired qualifications.

In response to Clark College's articulated reason for not hiring her, Scrivener presented circumstantial evidence that age actually played a role in the college's decision. When making all reasonable inferences in the light most favorable to the nonmoving party, the individual charged with hiring tenured faculty wanted to hire young individuals for the English position (at the expense of excluding members of a statutorily protected class).

President Branch was responsible for making final hiring decisions. Before the college finalized the description of the English instructor position, President Branch spoke at a public forum and advocated requiring zero experience for the college level, instructor position. A trier of fact could infer that the President wanted to attract more youthful candidates when making all reasonable inferences in the light most favorable to Scrivener.

Additionally, in the midst of the hiring process, President Branch gave his State of the College address. He declared,

> The most glaring need for diversity [in Clark College's workforce] is in our need for younger talent. 74 % of Clark College's workforce is over forty. And though I have a great affinity for people in this age group, employing people who bring different perspective will only benefit our college and community.

His statement is not a typical diversity statement.[2] He expresses a desire to hire individuals not within a protected class (people under 40) rather than individuals within a protected class.

---

[2] Clark College argues that President Branch's comments about diversity cannot support a finding of pretext. It cites to multiple federal district court cases. However, these cases (and the cases cited to therein) indicate that a diversity policy alone does not establish discrimination. There must be some nexus between the policy and the specific employment

The Court of Appeals disregarded President Branch's statements in the State of the College address as stray remarks that do not give rise to an inference of discriminatory intent. *See Scrivener*, 176 Wn. App. at 415. We disagree. Whether or not these statements alone would be sufficient to show either pretext or that Scrivener's age was a substantially motivating factor, they are circumstantial evidence probative of discriminatory intent. *See Reid v. Google, Inc.*, 50 Cal. 4th 512, 538-46, 235 P.3d 988, 113 Cal. Rptr. 3d 327 (2010).[3]

During that same time, President Branch filled faculty positions with more people under age 40 than people in the protected class. Scrivener presented evidence that the president mocked her with a reference to a television show associated with younger people and indicated he wanted candidates that display youthfulness. Taken together, the evidence presented by Scrivener creates a genuine

---

action. *Reed v. Agilent Techs., Inc.*, 174 F. Supp. 2d 176, 185-86 (D. Del. 2001) ("anecdotal evidence regarding the aspirational purpose of an employer's diversity policy, and its intent to ameliorate any underutilization of certain groups, is not sufficient" to raise an inference of discrimination); *see Jones v. Bernanke*, 493 F. Supp. 2d 18, 29 (D.D.C. 2007) ("[T]he mere existence of a diversity policy, without more, is insufficient to make out a prima facie case of reverse discrimination."); *Bernstein v. St. Paul Cos.*, 134 F. Supp. 2d 730, 739 n.12 (D. Md. 2001) ("A company's (or its CEO's) commitment to 'diversity,' if expressed in terms of creating opportunities for employees of different races and both genders, or fostering workplace tolerance, is not proof of discriminatory motive with respect to any specific hiring decision."); *Lutes v. Goldin*, 62 F. Supp. 2d 118, 131 (D.D.C. 1999) (employer's "concern for diversity in the workplace" is not evidence of an intent to discriminate). Viewing the evidence in the light most favorable to the nonmoving party, there is evidence that age played a role in the hiring for the English instructor position.

[3] In *Reid*, the California Supreme Court rejected the stray remarks doctrine. 50 Cal. 4th at 517, 538-46. "Under this doctrine, statements that non-decision-makers make or that decision makers make outside of the decisional process are deemed 'stray,' and they are irrelevant and insufficient to avoid summary judgment." *Id.* at 516. The court rejected the doctrine because it was "unnecessary and its categorical exclusion of evidence might lead to unfair results." *Id.* at 517; *see id.* at 538-46. The court noted, "An age-based remark not made directly in the context of an employment decision or uttered by a non-decision-maker may be relevant, circumstantial evidence of discrimination." *Id.* at 539. We agree.

11

issue of material fact concerning whether age was a substantial motivating factor in Clark College's decision not to hire Scrivener. The parties presented reasonable but competing inferences of discriminatory and nondiscriminatory intent. Therefore, a jury should weigh the evidence.

*Conclusion*

We reverse the order granting summary judgment and remand to the trial court for further proceedings consistent with this opinion. Attorney fees abide the final outcome.

Wiggins, J.

WE CONCUR.

Madsen, C.J.

González, J.

Schindler, J.P.T.

Stephens, J.

Appelwick, J.P.T.